SOUTH PORTO RICO SUGAR Co., demandante y apelante, *v.* MANUEL V. DOMENECH, TESORERO DE PUERTO RICO, demandado y apelado.

No. 6235.—*Sometido:* Mayo 25, 1934. *Resuelto:* Enero 18, 1935.

*R. Castro Fernández*, abogado de la apelante; *Hon. Procurador General Benjamin J. Horton* y *M. Rodríguez Serra, Procurador General Auxiliar*, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Es ésta una acción entablada por South Porto Rico Sugar Co., corporación doméstica, contra el Tesorero de Puerto Rico, en cobro de $36,714.63, con intereses, por concepto de contribuciones pagadas bajo protesta.

El 27 de noviembre de 1921, la demandante presentó al Tesorero demandado la siguiente declaración de sobrantes por el año contributivo comprendido entre el 1ro. de octubre de 1918 y el 30 de septiembre de 1919, a los efectos de la Ley No. 80 de 1919:

"1. Total del ingreso neto del año 1919 _____ $1, 184, 822. 01
"2. Dividendos pagados del ingreso neto _____ 84, 000. 00

"3. Sobrante _____ $1, 100, 822. 01

DEDUCCIONES:
"4. 50% de la cantidad que aparece en la línea 3    550, 411. 00
"5. Cantidad del ingreso neto pagada para la cancelación de obligaciones pendientes con anterioridad al comienzo del año contributivo, sin incluir intereses_____    900, 000. 00
"6. Importe de la contribución normal y adicional pagada _____

"7. Deducciones totales_____ $1, 450, 411. 00"

De acuerdo con la citada Ley 80, en vigor durante el año fiscal 1918–19, toda corporación estaba obligada a rendir dos planillas, una para los efectos de la contribución normal y adicional prescritas por las secciones 20 y 21 de la referida Ley y otra para los efectos de la contribución sobre el so-

brante del ingreso neto, prescrita por la sección 22 que dice así:

"Sección 22: Además de la contribución normal y adicional que prescriben las Secciones 20 y 21 se impondrá, tasará, cobrará y pagará por cada año contributivo sobre el sobrante del *ingreso neto* de toda corporación *doméstica* o asociación, sin incluir sociedades civiles, una contribución de 5 por ciento.

"El montante de tal sobrante se computará *descontando del ingreso neto total* el importe de las siguientes deducciones:

"(1) El montante de *dividendos* realmente pagados de dicho ingreso neto;

"(2) Una cantidad igual al *50 por ciento* del montante del ingreso neto que resulte, descontado que sea el importe de dividendos;

"(3) El montante realmente pagado del ingreso neto *para la cancelación de obligaciones* de la corporación o asociación pendientes con anterioridad al comienzo del año contributivo, pero sin incluir intereses sobre dichas obligaciones;

"(4) El importe de la contribución normal y adicional pagada de acuerdo con las Secciones 20 y 21 sobre el ingreso neto total."

Después de varios trámites que no hace al caso mencionar, por no estar relacionados con las cuestiones planteadas, el Tesorero resolvió consolidar los ingresos netos de la demandante y de la corporación South Porto Rico Sugar Co. de New Jersey fijándolos en $1,960,669.88, eliminando la deducción de $900,000, que por concepto de obligaciones pagadas durante el año contributivo 1918–19 solicita la demandante, y sobre esa base estimó que las contribuciones de sobrantes que debía pagar la demandante era $35,823.03.

El 4 de septiembre de 1930 la demandante pagó bajo protesta las contribuciones fijadas por el Tesorero que con sus recargos montaban en esa fecha a $36,714.63.

La demanda y la prueba de la demandante tienden principalmente a sostener:

1. Que el Tesorero carecía de facultades para consolidar las declaraciones de sobrantes de South Porto Rico Sugar Company de New Jersey y de la demandante.

2. Que la cantidad de $900,000 fué realmente pagada durante el año contributivo 1918–19 para cubrir obligaciones

contraídas anteriormente y que por tanto debió ser deducida de los sobrantes a los fines de la contribución.

La corte inferior resolvió que el Tesorero carecía de facultades para hacer la consolidación de declaraciones, que el ingreso neto de la demandante durante el año 1918–19 montó a $1,536,205.87, que no aparecía de los libros de la demandante que la cantidad de $900,000 hubiese sido realmente pagada durante el año contributivo 1918–19 y que por tanto dicha suma no era deducible de los sobrantes. Según la corte inferior la contribución sobre sobrantes debió haberse computado en la siguiente forma:

"1. Total del ingreso neto del año 1919_____ $1, 536, 205. 87
"2. Dividendos pagados del ingreso neto_____ 84, 000. 00

"3. Sobrante _____ $1, 452, 205. 87

    DEDUCCIONES:
"4. 50% de la cantidad que aparece
    en la línea 3_____ $726, 102. 94
"5. Cantidad del ingreso neto pagada
    para la cancelación de obligacio-
    nes pendientes con anterioridad
    al comienzo del año contribu-
    tivo, sin incluir intereses_____
"6. Montante de la contribución nor-
    mal y adicional pagada para el
    año contributivo _____ 148, 608. 60

"7. Deducciones totales _____ 874, 711. 54

"8. Montante sujeto a la contribución del 5%____ $577. 494. 33
"9. 5% del montante de la partida 8_____ $28, 874. 72"

Basándose en la computación que antecede la corte inferior formuló las siguientes conclusiones:

"De modo que, como la contribución a pagar, o sea $28,874.72 no se hizo efectiva hasta septiembre 4, 1930, debió pagar recargos hasta dicha fecha, montantes a $702.62, lo que hace un total de $29,577.34.

"Por consiguiente, la demandante tiene derecho a que se le devuelva la diferencia entre lo pagado por ella bajo protesta, o sea $36,714.63 y la cantidad de $29,577.34 que debió pagar, o sea $7,137.20 con interés a razón del 6% anual desde el 5 de septiembre de 1930 hasta su completo pago.

"Procede, pues, una sentencia a favor de la demandante por la cantidad de $7,137.29, con intereses a razón de 6% anual desde el 5 de septiembre de 1930 hasta su completo pago, todo ello sin especial condenación de costas."

De esta sentencia que se limita a condenar al Tesorero al pago de la cantidad de $7,137.29, con intereses, apeló únicamente la demandante. Se atribuye a la corte inferior el error de haber resuelto que la suma de $900,000, no fué pagada por la demandante durante el año contributivo 1918–19. La apelante alega que pagó de su ingreso neto dicha suma durante el año mencionado por ciertas obligaciones anteriormente contraídas.

La prueba de la parte demandante tiende a demostrar (a) que comenzó sus negocios en septiembre 30 de 1918; (b) que al comenzar dichos negocios debía a South Porto Rico Sugar Co. de New Jersey, entre otras sumas, la de $900,000 por concepto de tres pagarés de $300,000 cada uno, los cuales en unión de otras obligaciones, representaban el precio de la venta a la demandante de la factoría de azúcar y otras propiedades de la corporación de New Jersey; (c) que durante el año contributivo 1918–19 la demandante obtuvo beneficios, casi totalmente derivados de la producción y venta de azúcares, que la corte inferior fijó en $1,536,205.87 y que en los libros de la demandante se fijaban en $1,184,822.01; (d) que en septiembre 30 de 1919 la corporación de New Jersey debía a la demandante la suma de $1,923,041.29 por concepto de azúcares vendidos; (e) que en septiembre 30 de 1919 la demandante pagó a la corporación de New Jersey los tres pagarés de $300,000 mediante entrada en los libros, o sea mediante compensaciones de las deudas mutuas, reduciéndose por tanto el balance adeudado a la demandante a

$1,023,041.29; (f) que en la misma fecha, septiembre 30 de 1919, se cancelaron por la corporación de New Jersey los tres pagarés de $300,000, que luego fueron devueltos cancelados a la demandante, y al mismo tiempo se redujo la cuenta que en los libros de la demandante lleva el nombre "Notes Payable" en la suma de $900,000.

La demandante también adujo evidencia creditiva de que sus beneficios netos por el año 1918–19 estimados en $1,184,822.01, se llevaron en sus libros a la cuenta de "Ganancias y Pérdidas", y que de esta cuenta se dispuso en la siguiente forma:

(1) Se hizo un cargo de $84,000 y se acreditó esta suma a la cuenta de dividendos a pagar;

(2) Se hizo otro cargo de $900,000 y se acreditó la referida suma a una cuenta denominada "Reserve for Working Capital, Payment of Notes;"

(3) Se hizo otro cargo de $200,822.01, y se acreditó esta cantidad a la cuenta de "Sobrantes".

Aparece que el crédito de $900,000 en la cuenta "Reserve for Working Capital, Payment of Notes," fué llevado a los libros de la demandante para el año 1919–20, es decir que la referida cuenta no fué cerrada en septiembre 30, 1919, sino que fué llevada íntegramente a los libros de la demandante para el siguiente año. De este hecho dedujo el Tesorero y también la corte inferior que los tres pagarés por $300,000 cada uno no fueron pagados en septiembre 30 de 1919. La prueba de la demandante en cuanto al pago y cancelación de dichos pagarés no fué en modo alguno contradicha. De suerte que el caso gira exclusivamente sobre la interpretación y el efecto que ha de dársele al hecho de que la cuenta "Reserve for Working Capital, Payment of Notes," arrojara un crédito de $900,000 después de septiembre 30 de 1919.

El Tesorero y la corte inferior entendieron que la cuenta de reserva representaba una cantidad de dinero con la cual habrían de pagarse los tres pagarés, y concluyeron que, de haberse pagado dicha suma no podría subsistir el crédito de

$900,000. Examinemos la naturaleza de dicha cuenta de reserva para determinar si esta conclusión está justificada.

Es elemental que el valor de los bienes de una entidad, menos el montante de las deudas y obligaciones, es igual al capital. En otras palabras, el valor de los bienes es igual al montante de las obligaciones más el capital. Es sobre esta base que se llevan en el día de hoy los libros de la gran mayoría de las entidades dedicadas al comercio y la industria. Se abren cuentas que representan el valor de los bienes. El total de estas cuentas debe ser igual al total de las otras cuentas donde se detallan las obligaciones y el capital.

No hay duda alguna de que la cuenta "Reserve for Working Capital, Payment of Notes," en este caso era una cuenta capital y que aparecía como parte del pasivo. La corte inferior así lo admite, pero incurre en el error de considerarla como cuenta activa al mismo tiempo, es decir, de considerar que dicha cuenta representaba bienes valorados en $900,000 que habían de dedicarse específicamente al pago de los tres pagarés, y la corte se extraña de que, si los tres pagarés fueron realmente pagados con dicha suma, siguiera apareciendo la susodicha suma al año siguiente como parte del pasivo. Pero es evidente que con pasivo no se puede pagar una deuda. Las deudas se pagan con activo. Luego, si la cuenta "Reserve for Working Capital, Payment of Notes," es una cuenta de pasivo, es imposible esperar que los pagarés se pagaran de dicha cuenta. Puede que en definitiva esta cuenta represente una suma para ser distribuída a los accionistas de algún modo, como, por ejemplo, en caso de disolución; pero mientras tanto, esta suma debe hacerse constar en los libros como parte del pasivo. Debido al requisito legal de que el valor del capital en acciones debe hacerse constar en su importe original—que de ordinario es su valor a la par—cualesquiera altas o bajas en el mismo, por razón de ganancias o pérdidas habidas, reinvertidas en el negocio, deben hacerse figurar bajo distintas cuentas. *Kester on Accounting.—Theory & Practice,* p. 407.

Pero ¿con qué se pagaron entonces las obligaciones? La respuesta es sencilla: con bienes, con parte del activo, con parte del crédito que contra la corporación de New Jersey tenía la demandante por concepto de venta de azúcares, según aparece claramente de los libros de dicha demandante. Se redujo dicho crédito en la suma de $900,000 y se redujo también el pasivo en la misma suma mediante crédito a la cuenta de "Notes Payable."

¿Qué necesidad hay entonces para la existencia de la cuenta "Reserve for Working Capital, Payment of Notes"? Se ha demostrado que la corporación tuvo ganancias durante el año 1918–19 por valor de más de $1,000,000. Esto quiere decir que su capital aumentó en dicha suma, o en otras palabras, que la diferencia entre bienes y obligaciones aumentó en esa suma. El aumento en el capital no se extinguió con el año 1918–19, excepto en cuanto a la parte de dicho aumento que se dedicó al pago de dividendos. Hubo un aumento permanente en el capital, y ese aumento dentro de la práctica comercial había que llevarlo a los libros como cuenta capital. Así se hizo. Se abrió una cuenta capital denominada "Sobrante" y a ésta se llevó parte del aumento. El resto se llevó a otra cuenta capital denominada "Reserve for Working Capital, Payment of Notes."

Esto no quiere decir que se separaron sumas de dinero y se colocaron en un sitio seguro bajo los títulos "Sobrante" y "Reserve for Working Capital, Payment of Notes." Estas cuentas capitales son puramente nominales. El activo está completamente representado en las cuentas de activo. Es así que las cuentas capitales solamente indican ciertos fines a que se piensa dedicar aquella parte del activo que excede de las obligaciones, luego, la cuenta "Reserve for Working Capital, Payment of Notes" sencillamente indica que del excedente del activo sobre las obligaciones, la suma de $900,000 ha de dedicarse al pago de pagarés y a los gastos corrientes de operación de la industria. Aparece de los libros que parte del activo se dedicó efectivamente al pago de tres

pagarés por $300,000 cada uno. ¿Se disminuyó con esto el excedente del activo sobre las obligaciones o en otras palabras, se disminuyó el capital mediante el pago de los tres pagarés? Desde luego que no. Se disminuyó el activo en $900,000, pero también se disminuyeron las obligaciones en igual suma conforme aparece de los libros, mediante reducción en la cuenta de obligaciones llamada "Notes Payable." El capital no sufre merma alguna con el pago de las obligaciones. El excedente del activo sobre las obligaciones permaneció intacto. La parte de dicho excedente que representaba la cuenta "Reserve for Working Capital, Payment of Notes", también quedó intacta. Como ya se habían pagado las obligaciones, en el futuro podía considerarse que esa parte del excedente había de utilizarse para gastos corrientes.

Opinamos que la corte inferior erró en su interpretación de la cuenta "Reserve for Working Capital, Payment of Notes", y que los libros de la demandante claramente demuestran que las tres obligaciones por $300,000 cada una fueron pagadas en septiembre 30 de 1919.

Toda vez que la prueba demuestra que los pagarés se emitieron con anterioridad al año económico 1918–19 y que fueron satisfechos de los ingresos de la demandante percibidos durante dicho año, somos de opinión que la demandante tenía derecho, de acuerdo con los términos de la sección 22 de la Ley No. 80 de junio 26, 1919, a deducir de sus "Sobrantes", a los fines de la contribución sobre sobrantes impuesta por la referida ley, la suma de $900,000 pagados para satisfacer los tres pagarés. Hecha esta deducción es claro que no existen sobrantes tributables, como surge claramente de la prueba practicada.

*Debe, por tanto, revocarse la sentencia de la corte inferior* y dictarse otra en su lugar condenando al demandado a la devolución de la suma de $36,714.63 pagada bajo protesta, con intereses sobre dicha suma al 6 por ciento anual desde el 5 de septiembre de 1930 hasta su completo pago, sin especial condenación de costas.

También se alegó como segundo error que el Tesorero de Puerto Rico carecía de autoridad y facultad para computarle e imponerle una contribución a dicha demandante y para iniciar procedimiento alguno en cobro de la misma por haber transcurrido más de cinco años de la fecha de rendida la declaración sobre sobrante. Resuelto el primer error en favor de la corporación demandante y revocada la sentencia apelada por los fundamentos que se exponen en esta opinión, es innecesario considerar este segundo error.